Justice Ginsburg
delivered the opinion of the Court.
This case involves a securities-fraud complaint filed by Connecticut Retirement Plans and Trust Funds (Connecticut Retirement) against biotechnology company Amgen Inc. and several of its officers (collectively, Amgen). Seeking class-action certification under Federal Rule of Civil Procedure 23, Connecticut Retirement invoked the “fraud-on-the-market” presumption endorsed by this Court in Basic Inc. v. Levinson, 485 U. S. 224 (1988), and recognized most recently in Erica P. John Fund, Inc. v. Halliburton Co., 563 U. S. 804 (2011). The fraud-on-the-market premise is that the price of a security traded in an efficient market will reflect all publicly available information about a company; accordingly, a buyer of the security may be presumed to have relied on that information in purchasing the security.
*459 Amgen has conceded the efficiency of the market for the securities at issue and has not contested the public character of the allegedly fraudulent statements on which Connecticut Retirement’s complaint is based. Nor does Amgen here dispute that Connecticut Retirement meets all of the class-action prerequisites stated in Rule 23(a): (1) the alleged class “is so numerous that joinder of all members is impracticable”; (2) “there are questions of law or fact common to the class”; (3) Connecticut Retirement’s claims are “typical of the claims ... of the class”; and (4) Connecticut Retirement will “fairly and adequately protect the interests of the class.”
The issue presented concerns the requirement stated in Rule 23(b)(3) that “the questions of .law or fact common to class members predominate over any questions affecting only individual members.” Amgen contends that to meet the predominance requirement, Connecticut Retirement must do more than plausibly plead that Amgen’s alleged misrepresentations and misleading omissions materially affected Amgen’s stock price. According to Amgen, certification must be denied unless Connecticut Retirement proves materiality, for immaterial misrepresentations or omissions, by definition, would have no impact on Amgen’s stock price in an efficient market.
While Connecticut Retirement certainly must prove materiality to prevail on the merits, we hold that such proof is not a prerequisite to class certification. Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. Because materiality is judged according to an objective standard, the materiality of Amgen’s alleged misrepresentations and omissions is a question common to all members of the class Connecticut Retirement would represent. The alleged misrepresentations and omissions, whether material or immaterial, would be so equally for all investors composing the class. As vital, the plaintiff class’s inability to prove materiality would not result in individual *460 questions predominating. Instead, a failure of proof on the issue of materiality would end the case, given that materiality is an essential element of the class members’ securities-fraud claims. As to materiality, therefore, the class is entirely cohesive: It will prevail or fail in unison. In no- event will the individual circumstances of particular class members bear on the inquiry.
Essentially, Amgen, also the dissenters from today’s decision, would have us put the cart before the horse. To gain certification under Rule 23(b)(3), Amgen and the dissenters urge, Connecticut Retirement must first establish that it will win the fray. But the office of a Rule 23(b)(3) certification ruling is not to adjudicate the case; rather, it is to select the “metho[d]” best suited to adjudication of the controversy “fairly and efficiently.”
I
A
This case involves the interaction between federal securities-fraud laws and Rule 23’s requirements for class certification. To obtain certification of a class action for money damages under Rule 23(b)(3), a plaintiff must satisfy Rule 23(a)’s above-mentioned prerequisites of numerosity, commonality, typicality, and adequacy of representation, see swpra, at 459, and must also establish that “the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.” To recover damages in a private securities-fraud action under § 10(b) of the Securities Exchange Act of 1934, 48 Stat. 891, as amended, 15 U. S. C. § 78j(b) (2006 ed., Supp. V), and Securities and Exchange Commission Rule 10b-5, 17 CFR §240.10b-5 (2011), a plaintiff must prove “(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the *461 purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.” Matrixx Initiatives, Inc. v. Siracusano, 563 U. S. 27, 37-38 (2011) (internal quotation marks omitted).
“Reliance,” we have explained, “is an essential element of the § 10(b) private cause of action” because “proof of reliance ensures that there is a proper connection between a defendant’s misrepresentation and a plaintiff’s injury.” Halliburton, 563 U. S., at 810 (internal quotation marks omitted). “The traditional (and most direct) way” for a plaintiff to demonstrate reliance “is by showing that he was aware of a company’s statement and engaged in a relevant transaction . . . based on that specific misrepresentation.” Ibid. We have recognized, however, that requiring proof of direct reliance “would place an unnecessarily unrealistic evidentiary burden on [a] plaintiff who has traded on an impersonal market.” Basic, 485 U. S., at 245. Accordingly, in Basic the Court endorsed the “fraud-on-the-market” theory, which permits certain Rule 10b-5 plaintiffs to invoke a rebuttable presumption of reliance on material misrepresentations aired to the general public. Id., at 241-249.[1]
The fraud-on-the-market theory rests on the premise that certain well developed markets are efficient processors of public information. In such markets, the “market price of shares” will “reflec[t] all publicly available information.” Id., at 246. Few investors in such markets, if any, can consistently achieve above-market returns by trading based on publicly available information alone, for if such above-market returns were readily attainable, it would mean that market *462 prices were not efficiently incorporating the full supply of public information. See R. Brealey, S. Myers, & F. Allen, Principles of Corporate Finance 330 (10th ed. 2011) (“[I]n an efficient market, there is no way for most investors to achieve consistently superior rates of return.”).
In Basic, we held that if a market is shown to be efficient, courts may presume that investors who traded securities in that market relied on public, material misrepresentations regarding those securities. See 485 U. S., at 245-247. This presumption springs from the very concept of market efficiency. If a market is generally efficient in incorporating publicly available information into a security’s market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security’s price. Furthermore, it is reasonable to presume that most investors—knowing that they have little hope of outperforming the market in the long run based solely on their analysis of publicly available information—will rely on the security’s market price as an unbiased assessment of the security’s value in light of all public information. Thus, courts may presume that investors trading in efficient markets indirectly rely on public, material misrepresentations through their “reliance on the integrity of the price set by the market.” Id., at 245. “[T]he presumption,” however, is “just that, and [can] be rebutted by appropriate evidence.” Halliburton, 563 U. S., at 811. See also Basic, 485 U. S., at 248-249 (providing examples of showings that would rebut the fraud-on-the-market presumption).
Although fraud on the market is a substantive doctrine of federal securities-fraud law that can be invoked by any Rule 10b-5 plaintiff, see, e. g., Black v. Finantra Capital, Inc., 418 F. 3d 203, 209 (CA2 2005); Blackie v. Barrack, 524 F. 2d 891, 908 (CA9 1975), the doctrine has particular significance in securities-fraud class actions. Absent the fraud-on-the-market theory, the requirement that Rule 10b-5 plaintiffs establish reliance would ordinarily preclude certification of a *463 class action seeking money damages because individual reliance issues would overwhelm questions common to the class. See Basic, 485 U. S., at 242. The fraud-on-the-market theory, however, facilitates class certification by recognizing a rebuttable presumption of classwide reliance on public, material misrepresentations when shares are traded in an efficient market. Ibid.[2]
B
In its complaint, Connecticut Retirement alleges that Amgen violated § 10(b) and Rule 10b-5 through certain misrepresentations and misleading omissions regarding the safety, efficacy, and marketing of two of its flagship drugs.[3] According to Connecticut Retirement, these misrepresentations and omissions artificially inflated the price of Amgen’s stock at the time Connecticut Retirement and numerous other securities buyers purchased- the stock. When the truth came to light, Connecticut Retirement asserts, Am-gen’s stock price declined, resulting in financial losses to those who purchased the stock at the inflated price. In its answer to Connecticut Retirement’s complaint, Amgen conceded that “[a]t all relevant times, the market for [its] securities,” which are traded on the NASDAQ stock exchange, “was an efficient market”; thus, “the market for Amgen’s securities promptly digested current information regarding Amgen from all publicly available sources and reflected such information in Amgen’s stock price.” Consolidated Amended Class Action Complaint ¶¶ 199-200 in No. CV-07-2536 (CD Cal.); Answer ¶¶199-200.
*464 The District Court granted Connecticut Retirement’s motion to certify a class action under Rule 23(b)(3) on behalf of all investors who purchased Amgen stock between the date of the first alleged misrepresentation and the date of the last alleged corrective disclosure. After granting Amgen’s request to take an interlocutory appeal from the District Court’s class-certification order, see Fed. Rule Civ. Proc. 23(f), the Court of Appeals affirmed. 660 F. 3d 1170 (CA9 2011).
Amgen raised two arguments on appeal. First, Amgen contended that the District Court erred by certifying the proposed class without first requiring Connecticut Retirement to prove that Amgen’s alleged misrepresentations and omissions were material. Second, Amgen argued that the District Court erred by refusing to consider certain rebuttal evidence that Amgen had proffered in opposition to Connecticut Retirement’s class-certification motion. This evidence, in Amgen’s view, demonstrated that the market was well aware of the truth regarding its alleged misrepresentations and omissions at the time the class members purchased their shares.
The Court of Appeals rejected both contentions. Am-gen’s first argument, the Court of Appeals noted, made the uncontroversial point that immaterial misrepresentations and omissions “by definition [do] not affect. . . stock price[s] in an efficient market.” Id., at 1175. Thus, where misrepresentations and omissions are not material, there is no basis for presuming classwide reliance on those misrepresentations and omissions through the information-processing mechanism of the market price. “The problem with that argument,” the Court of Appeals observed, is evident: “[Because materiality is an element of the merits of their securities fraud claim, the plaintiffs cannot both fail to prove materiality yet still have a viable claim for which they would need to prove reliance individually.” Ibid. The Court of Appeals thus concluded that “proof of materiality is not nec *465 essary” to ensure compliance with Rule 23(b)(3)’s requirement that common questions predominate. Id., at 1177.
With respect to Amgen’s second argument, the Court of Appeals determined that Amgen’s ■ proffered rebuttal evidence was merely “a method of refuting [the] materiality” of the misrepresentations and omissions alleged in Connecticut Retirement’s complaint. Ibid. Having already concluded that a securities-fraud plaintiff does not need to prove materiality before class certification, the court similarly held that “the district court correctly refused to consider” Amgen’s rebuttal evidence “at the class certification stage.” Ibid.
We granted Amgen’s petition for certiorari, 567 U. S. 905 (2012), to resolve a conflict among the Courts of Appeals over whether district courts must require plaintiffs to prove, and must allow defendants to present evidence rebutting, the element of materiality before certifying a class action under § 10(b) and Rule 10b-5. Compare 660 F. 3d 1170 (case below) and Schleicher v. Wendt, 618 F. 3d 679, 687 (CA7 2010) (materiality need not be proved at the class-certification stage), with In re Salomon Analyst Metromedia Litigation, 544 F. 3d 474, 484-485, 486, n. 9 (CA2 2008) (plaintiff must prove, and defendant may present evidence rebutting, materiality before class certification). See also In re DVI, Inc. Securities Litigation, 639 F. 3d 623, 631-632, 637-638 (CA3 2011) (plaintiff need not prove materiality before class certification, but defendant may present rebuttal evidence on the issue).
II
A
The only issue before us in this case is whether Connecticut Retirement has satisfied Rule 23(b)(3)’s requirement that “questions of law or fact common to class mémbers predominate over any questions affecting only individual members.” Although we have cautioned that a court’s class-certification analysis must be “rigorous” and may “entail some overlap *466 with the merits of the plaintiff’s underlying claim,” Wal-Mart Stores, Inc. v. Dukes, 564 U. S. 338, 351 (2011) (internal quotation marks omitted), Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent— but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied. See id., at 351, n. 6 (a district court has no “ ‘authority to conduct a preliminary inquiry into the merits of a suit’ ” at class certification unless it is necessary “to determine the propriety of certification” (quoting Eisen v. Carlisle & Jacquelin, 417 U. S. 156, 177 (1974))); Advisory Committee’s 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 144 (“[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision.”).
Bearing firmly in mind that the focus of Rule 23(b)(3) is on the predominance of common questions, we turn to Amgen’s contention that the courts below erred by failing to require Connecticut Retirement to prove the materiality of Amgen’s alleged misrepresentations and omissions before certifying Connecticut Retirement’s proposed class. As Amgen notes, materiality is not only an element of the Rule 10b-5 cause of action; it is also an essential predicate of the fraud-on-the-market theory. See Basic, 485 U. S., at 247 (“[W]here materially misleading statements have been disseminated into an impersonal, well-developed market for securities, the reliance of individual plaintiffs on the integrity of the market price may be presumed.” (emphasis added)). That theory, Amgen correctly observes, is premised on the understanding that in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price. See id., at 246-247. Because immaterial information, by definition, does not affect market price, it cannot be relied upon indirectly by investors who, as the fraud-on-the-market theory presumes, rely on *467 the market price’s integrity. Therefore, the fraud-on-the-market theory cannot apply absent a material misrepresentation or omission. And without the fraud-on-the-market theory, the element of reliance cannot be proved on a class-wide basis through evidence common to the class. See id., at 242. It thus follows, Amgen contends, that materiality must be proved before a securities-fraud class action can be certified.
Contrary to Amgen’s argument, the key question in this case is not whether materiality is an essential predicate of the fraud-on-the-market theory; indisputably it is.[4] Instead, the pivotal inquiry is whether proof of materiality is needed to ensure that the questions of law or fact common to the class will “predominate over any questions affecting only individual members” as the litigation progresses. Fed. Rule Civ. Proc. 23(b)(3). For two reasons, the answer to this question is clearly “no.”
First, because “[t]he question of materiality ... is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,” materiality can be proved through evidence common to the class. TSC Industries, Inc. v. Northway, Inc., 426 U. S. 438, 445 (1976). Consequently, materiality is a “common questio[n]” for purposes of Rule 23(b)(3). Basic, 485 U. S., at 242 (listing “materiality” as one of the questions common to the Basic class members).
Second, there is no risk whatever that a failure of proof on the common question of materiality will result in individual *468 questions predominating. Because materiality is an essential element of a Rule 10b-5 claim, see Matrixx Initiatives, 563 U. S., at 37, Connecticut Retirement’s failure to present sufficient evidence of materiality to defeat a summary-judgment motion or to prevail at trial would not cause individual reliance questions to overwhelm the questions common to the class. Instead, the failure of proof on the element of materiality would end the case for one and for all; no claim would remain in which individual reliance issues could potentially predominate.
Totally misapprehending our essential point, Justice Thomas’ dissent asserts that our “entire argument is based on the assumption that the fraud-on-the-market presumption need not be shown at certification because it will be proved later on the merits.” Post, at 495, n. 9. Our position is not so based. We rest, instead, entirely on the text of Rule 23(b)(3), which provides for class certification if “the questions of law or fact common to class members predominate over any questions affecting only individual members.” A failure of proof on the common question of materiality ends the litigation and thus will never cause individual questions of reliance or anything else to overwhelm questions common to the class. Therefore, under the plain language of Rule 23(b)(3), plaintiffs are not required to prove materiality at the class-certification stage. In other words, they need not, at that threshold, prove that the predominating question will be answered in their favor.
Justice Thomas urges that a plaintiff seeking class certification “must show that the elements of [her] claim are susceptible to elasswide proof.” Post, at 491. See also post, at 496 (criticizing the Court for failing to focus its analysis on “whether the element of reliance is susceptible to classwide proof”). From this premise, Justice Thomas concludes that Rule 10b-5 plaintiffs must prove materiality before class certification because (1) “materiality is a necessary component of fraud on the market,” and (2) without fraud on *469 the market, the Rule 10b-5 element of reliance is not “susceptible of a classwide answer.” Post, at 491, 495. See also post, at 496 (“[I]f a plaintiff wishes to use Basic’s presumption to prove that reliance is a common question, he must establish the entire presumption, including materiality, at the class certification stage.”).
Rule 23(b)(3), however, does not require a plaintiff seeking class certification to prove that each “elemen[t] of [her] claim [is] susceptible to classwide proof.” Post, at 491. What the Rule does require is that common questions “predominate over any questions affecting only individual [class] members.” Fed. Rule Civ. Proc. 23(b)(3) (emphasis added). Nowhere does Justice Thomas explain how, in an action invoking the Basic presumption, a plaintiff class’s failure to prove an essential element of its claim for relief will result in individual questions predominating over common ones. Absent proof of materiality, the claim of the Rule 10b-5 class will fail in its entirety; there will be no remaining individual questions to adjudicate.
Consequently, proof of materiality is not required to establish that a proposed class is “sufficiently cohesive to warrant adjudication by representation”—the focus of the predominance inquiry under Rule 23(b)(3). Amchem Products, Inc. v. Windsor, 521 U. S. 591, 623 (1997). No doubt a clever mind could conjure up fantastic scenarios in which an individual investor might rely on immaterial information (think of the superstitious investor who sells her securities based on a CEO’s statement that a black cat crossed the CEO’s path that morning). But such objectively unreasonable reliance does not give rise to a Rule 10b-5 claim. See TSC Industries, 426 U. S., at 445 (materiality is judged by an objective standard). Thus, “the individualized questions of reliance,” post, at 494, n. 8, that hypothetically might arise when a failure of proof on the issue of materiality dooms the .fraud-on-the-market class are far more imaginative than real. Such “individualized questions” do not undermine class cohe *470 sion and thus cannot be said to “predominate” for purposes of Rule 23(b)(3).[5]
Because the question of materiality is common to the class, and because a failure of proof on that issue would not result in questions “affecting only individual members” predominating, Rule 23(b)(3), Connecticut Retirement was not required to prove the materiality of Amgen’s alleged misrepresentations and omissions at the class-certification stage. This is not a case in which the asserted problem—i. e., that the plaintiff class cannot prove materiality—“exhibits some fatal dissimilarity” among class members that would make use of the class-action device inefficient or unfair. Nagar-eda, Class Certification in the Age of Aggregate Proof, 84 N. Y. U. L. Rev. 97,107 (2009). Instead, what Amgen alleges is “a fatal similarity—[an alleged] failure of proof as to an element of the plaintiffs’ cause of action.” Ibid. Such a contention is properly addressed at trial or in a ruling on a summary-judgment motion. The allegation should not be resolved in deciding whether to certify a proposed class. Ibid. See also Schleicher, 618 F. 3d, at 687 (“[WJhether a statement is materially false is a question common to all class members and therefore may be resolved on a class-wide basis after certification.”).
B
Insisting that materiality must be proved at the class-certification stage, Amgen relies chiefly on two arguments, neither of which we find persuasive.[6]
*471 1
Amgen points first to our statement in Halliburton that “securities fraud plaintiffs must prove certain things in order to invoke Basic’s rebuttable presumption of reliance,” including “that the alleged misrepresentations were publicly known ..., that the stock traded in an efficient market, and that the relevant transaction took place ‘between the time *472 the misrepresentations were made and the time the truth was revealed.’ ” 563 U. S., at 811 (quoting Basic, 485 U. S., at 248, n. 27). See also Dukes, 564 U. S., at 351, n. 6 (“[P]laintiffs seeking 23(b)(3) certification [of a securities-fraud class action] must prove that their shares were traded on an efficient market.”). If these fraud-on-the-market predicates must be proved before class certification, Amgen contends, materiality—another fraud-on-the-market predicate—should be treated no differently.
We disagree. As an initial matter, the requirement that a putative class representative establish that it executed trades “between the time the misrepresentations were made and the time the truth was revealed” relates primarily to the Rule 23(a)(3) and (a)(4) inquiries into typicality and adequacy of representation, not to the Rule 23(b)(3) predominance inquiry. Basic, 485 U. S., at 248, n. 27.[7] A security’s market price cannot be affected by a misrepresentation not yet made, and in an efficient market, a misrepresentation’s impact on market price is quickly nullified once the truth comes to light. Thus, a plaintiff whose relevant transactions were not executed between the time the misrepresentation was made and the time the truth was revealed cannot be said to have indirectly relied on the misrepresentation through its reliance on the integrity of the market price.[8] Such a plaintiff’s claims, therefore, would not be “typical” of the claims *473 of investors who did trade during the window between misrepresentation and truth revelation. Fed. Rule Civ. Proc. 23(a)(3). Nor could a court confidently conclude that such a plaintiff would “fairly and adequately protect the interests” of investors who traded during the relevant window. Rule 23(a)(4). The requirement that the fraud-on-the-market theory’s trade-timing predicate be established before class certification thus sheds little light on the question whether materiality must also be proved at the class-certification stage.
Amgen is not aided by Halliburton’s statement that market efficiency and the public nature of the alleged misrepresentations must be proved before a securities-fraud class action can be certified. As Amgen notes, market efficiency, publicity, and materiality can all be proved on a classwide basis. Furthermore, they are all essential predicates of the fraud-on-the-market theory. Unless those predicates are established, there is no basis for presuming that the defendant’s alleged misrepresentations were reflected in the security’s market price, and hence no grounding for any contention that investors indirectly relied on those misrepresentations through their reliance on the integrity of the market price. But unlike materiality, market efficiency and publicity are not indispensable elements of a Rule 10b-5 claim. See Matrixx Initiatives, 563 U. S., at 37-38 (listing elements of a Rule 10b-5 claim). Thus, where the market for a security is inefficient or the defendant’s alleged misrepresentations were not aired publicly, a plaintiff cannot invoke the fraud-on-the-market presumption. She can, however, attempt to establish reliance through the “traditional” mode of demonstrating that she was personally “aware of [the defendant’s] statement and engaged in a relevant transaction . . . based on that specific misrepresentation.” Halliburton, 563 U. S., at 810. Individualized reliance issues would predominate in such a lawsuit. See Basic, 485 U. S., at 242. The litigation, *474 therefore, could not be certified under Rule 23(b)(3) as a class action, but the initiating plaintiff’s claim would remain live; it would not be “dead on arrival.” 660 F. 3d, at 1175.
A failure of proof on the issue of materiality, in contrast, not only precludes a plaintiff from invoking the fraud-on-the-market presumption of classwide reliance; it also establishes as a matter of law that the plaintiff cannot prevail on the merits of her Rule 10b-5 claim. Materiality thus differs from the market-efficiency and publicity predicates in this critical respect: While the failure of common, classwide proof on the issues of market efficiency and publicity leaves open the prospect of individualized proof of reliance, the failure of common proof on the issue of materiality ends the case for the class and for all individuals alleged to compose the class. See Brief for United States as Amicus Curiae 20 (“Unless the failure of common proof gives rise to a need for individualized proof, it does not cast doubt on the propriety of class certification.”). In short, there can be no actionable reliance, individually or collectively, on immaterial information. Because a failure of proof on the issue of materiality, unlike the issues of market efficiency and publicity, does not give rise to any prospect of individual questions overwhelming common ones, materiality need not be proved prior to Rule 23(b)(3) class certification.
2
Amgen also contends that certain “policy considerations” militate in favor of requiring precertification proof of materiality. Brief for Petitioners 28. An order granting class certification, Amgen observes, can exert substantial pressure on a defendant “to settle rather than incur the costs of defending a class action and run the risk of potentially ruinous liability.” Advisory Committee’s 1998 Note on subd. (f) of Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 143. See also AT&T Mobility LLC v. Concepcion, 563 U. S. 333, 350 (2011) (class actions can entail a “risk of ‘in terrorem’ settlements”). Absent a requirement to evaluate materiality at the class- *475 certification stage, Amgen contends, the issue may never be addressed by a court, for the defendant will surrender and settle soon after a class is certified. Insistence on proof of materiality before certifying a securities-fraud class action, Amgen thus urges, ensures that the issue will be adjudicated and not forgone. See also post, at 485-486 (Scalia, J., dissenting) (expressing the same concerns).
In this regard, however, materiality does not differ from other essential elements of a Rule 10b-5 claim, notably, the requirements that the statements or omissions on which the plaintiff’s claims are based were false or misleading and that the alleged statements or omissions caused the plaintiff to suffer economic loss. See Matrixx Initiatives, 563 U. S., at 37-38. Settlement pressure exerted by class certification may prevent judicial resolution of these issues. Yet this Court has held that loss causation and the falsity or misleading nature of the defendant’s alleged statements or omissions are common questions that need not be adjudicated before a class is certified. See Halliburton, 563 U. S., at 809 (loss causation need not be proved at the class-certification stage); Basic, 485 U. S., at 242 (“the falsity or misleading nature of the . . . public statements” allegedly made by the defendant is a “common questio[n]”). See also Schleicher, 618 F. 3d, at 685 (falsity of alleged misstatements need not be proved before certification of a securities-fraud class action).
Congress, we count it significant, has addressed the settlement pressures associated with securities-fraud class actions through means other than requiring proof of materiality at the class-certification stage. In enacting the Private Securities Litigation Reform Act of 1995 (PSLRA), 109 Stat. 737, Congress recognized that although private securities-fraud litigation furthers important public-policy interests, prime among them, deterring wrongdoing and providing restitution to defrauded investors, such lawsuits have also been subject to abuse, including the “extraction]” of “extortionate ‘settlements’ ” of frivolous claims. H. R. Conf. Rep. No. 104-369, *476 pp. 31-32 (1995). The PSLRA’s response to the perceived abuses was, inter alia, to “impos[e] heightened pleading requirements” for seeurities-fraud actions, “limit recoverable damages and attorney’s fees, provide a 'safe harbor’ for forward-looking statements, impose new restrictions on the selection of (and compensation awarded to) lead plaintiffs, mandate imposition of sanctions for frivolous litigation, and authorize a stay of discovery pending resolution of any motion to dismiss.” Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U. S. 71, 81-82 (2006). See also 15 U. S. C. § 78u-4 (2006 ed. and Supp. V). Congress later fortified the PSLRA by enacting the Securities Litigation Uniform Standards Act of 1998, 112 Stat. 3227, which curtailed plaintiffs’ ability to evade the PSLRA’s limitations on federal seeurities-fraud litigation by bringing class-action suits under state rather than federal law. See 15 U. S. C. §78bb(f)(1) (2006 ed.).
While taking these steps to curb abusive seeurities-fraud lawsuits, Congress rejected calls to undo the fraud-on-the-market presumption of classwide reliance endorsed in Basic. See Langevoort, Basic at Twenty: Rethinking Fraud on the Market, 2009 Wis. L. Rev. 151, 153, and n. 8 (noting that the initial version of H. R. 10, 104th Cong., 1st Sess. (1995), an unenacted bill that, like the PSLRA, was designed to curtail abuses in private securities litigation, “would have undone Basic”). See also Common Sense Legal Reform Act: Hearings before the Subcommittee on Telecommunications and Finance of the House Committee on Commerce, 104th Cong., 1st Sess., 92, 236-237, 251-252, 272 (1995) (witnesses criticized the fraud-on-the-market presumption and expressed support for H. R. 10’s requirement that seeurities-fraud plaintiffs prove direct reliance). Nor did Congress decree that seeurities-fraud plaintiffs prove each element of their claim before obtaining class certification. Because Congress has homed in on the precise policy concerns raised in Am-gen’s brief, “[w]e do not think it appropriate for the judiciary *477 to make its own further adjustments by reinterpreting Rule 23 to make likely success on the merits essential to class certification in seeurities-fraud suits.” Schleicher, 618 F. 3d, at 686; cf. Smith v. Bayer Corp., 564 U. S. 299, 317-318 (2011) (“Congress’s decision to address the relitigation concerns associated with class actions through the mechanism of removal provides yet another reason for federal courts to adhere in this context to longstanding principles of preclusion.”).
In addition to seeking our aid in warding off “in terrorem” settlements, Amgen also argues that requiring proof of materiality before class certification would conserve judicial resources by sparing judges the task of overseeing large class proceedings in which the essential element of reliance cannot be proved on a classwide basis. In reality, however, it is Amgen’s position, not the judgments of the lower courts in this case, that would waste judicial resources. Amgen’s argument, if embraced, would necessitate a minitrial on the issue of materiality at the class-certification stage. Such preliminary adjudications would entail considerable expenditures of judicial time and resources, costs scarcely anticipated by Federal Rule of Civil Procedure 23(c)(1)(A), which instructs that the decision whether to certify a class action be made “[a]t an early practicable time.” If the class is certified, materiality might have to be shown all over again at trial. And if certification is denied for failure to prove materiality, nonnamed class members would not be bound by that determination. See Smith, 564 U. S., at 312-318. They would be free to renew the fray, perhaps in another forum, perhaps with a stronger showing of materiality.
Given the tenuousness of Amgen’s judicial-economy argument, Amgen’s policy arguments ultimately return to the contention that private seeurities-fraud actions should be hemmed in to mitigate their potentially “vexatiou[s]” character. Blue Chip Stamps v. Manor Drug Stores, 421 U. S. 723, 739 (1975). We have already noted what Congress has done *478 to control exorbitant securities-fraud actions. See supra, at 476-477. Congress, the Executive Branch, and this Court, moreover, have “recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission.” Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U. S. 308, 313 (2007); see H. R. Conf. Rep. No. 104-369, at 31; Brief for United States as Amicus Curiae 1. See also Amchem, 521 U. S., at 617 (“ ‘The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights.’” (quoting Mace v. Van Ru Credit Corp., 109 F. 3d 338, 344 (CA7 1997))). We have no warrant to encumber securities-fraud litigation by adopting an atextual requirement of precertification proof of materiality that Congress, despite its extensive involvement in the securities field, has not sanctioned.
C
Justice Sc alia acknowledges that proof of materiality is not required to satisfy Rule 23(b)(3)’s predominance requirement. See post, at 483. Nevertheless, he maintains that full satisfaction of Rule 23’s requirements is insufficient to obtain class certification under Basic. In Justice Scalia’s view, the Court’s decision in Basic established a special rule: A securities-fraud class action cannot be certified unless all of the prerequisites of the fraud-on-the-market presumption of reliance, including materiality, have first been established. Post, at 484.
The purported rule is Justice Scalia’s invention. It cannot be attributed to anything the Court said in Basic. That decision is best known for its endorsement of the fraud-on-the-market theory. But the opinion also established something more. It stated the proper standard for judging *479 the materiality of misleading statements regarding the existence and status of preliminary merger discussions. See 485 U. S., at 230-241, 250 (“Materiality in the merger context depends on the probability that the transaction will be consummated, and its significance to the issuer of the securities.”). The District Court in Basic certified a class of investors whose share prices were allegedly depressed by misleading statements that disguised ongoing merger negotiations. Id., at 228. Postcertification, the court granted summary judgment to the defendants on the ground that the alleged misstatements were immaterial as a matter of law. Id., at 228-229. The Court of Appeals affirmed the class certification but reversed the grant of summary judgment. Id., at 229. This Court, in turn, vacated the Court of Appeals’ judgment and remanded for further proceedings on the defendants’ summary-judgment motion in light of the materiality standard set forth in the Court’s opinion. Id., at 240-241, 250. Notably, however, we did not disturb the District Court’s class-certification order, which we stated “was appropriate when made.” Id., at 250.[9]
If Justice Scalia were correct that our decision in Basic demands proof of materiality before class certification, the Court in Basic should have ordered the lower courts to reconsider on remand both the defendants’ entitlement to summary judgment and the propriety of class certification. Instead, the Court expressly endorsed the District Court’s class-certification order while at the same time recognizing *480 that further proceedings were necessary to determine whether the plaintiffs had mustered sufficient evidence to satisfy the relatively lenient standard for avoiding summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U. S. 242, 248 (1986) (“[Sjummary judgment will not lie if . . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party.”). Unlike Justice Sc alia, we are unwilling to presume that Basic announced a rule requiring precertification proof of materiality when Basic failed to apply any such rule to the very case before it.[10]
Ill
Amgen also argues that the District Court erred by refusing to consider the rebuttal evidence Amgen proffered in opposing Connecticut Retirement’s class-certification motion. This evidence, Amgen contends, showed that “in light of all the information available to the market,” its alleged misrepresentations and misleading omissions “could not be presumed to have altered the market price because they would not have ‘significantly altered the total mix of information made available.’” Brief for Petitioners 40-41 (quoting Basic, 485 U. S., at 282). For example, Connecticut Retirement’s complaint alleges that an Amgen executive misleadingly downplayed the significance of an upcoming Food and Drug Administration advisory committee meeting by incorrectly stating that the meeting would not focus on one of Amgen’s leading drugs. See App. to Pet. for Cert. 17a. Amgen responded to this allegation by presenting public *481 documents—including the committee’s meeting agenda, which was published in the Federal Register more than a month before the meeting—stating that safety concerns associated with Amgen’s drug would be discussed at the meeting. See id., at 41a-42a. See also 69 Fed. Reg. 16582 (2004).
The District Court did not err, we agree with the Court of Appeals, by disregarding Amgen’s rebuttal evidence in deciding whether Connecticut Retirement’s proposed class satisfied Rule 23(b)(3)’s predominance requirement. The Court of Appeals concluded, and Amgen does not contest, that Am-gen’s rebuttal evidence aimed to prove that the misrepresentations and omissions alleged in Connecticut Retirement’s complaint were immaterial. 660 F. 3d, at 1177 (characterizing Amgen’s rebuttal evidence as an attempt to present a “ ‘truth-on-the-market’ defense,” which the Court of Appeals explained “is a method of refuting an alleged misrepresentation’s materiality”). See also Reply Brief 17 (Amgen’s evidence was offered to rebut the “materiality predicate” of the fraud-on-the-market theory). As explained above, however, the potential immateriality of Amgen’s alleged misrepresentations and omissions is no barrier to finding that common questions predominate. See Part II, supra. If the alleged misrepresentations and omissions are ultimately found immaterial, the fraud-on-the-market presumption of classwide reliance will collapse. But again, as earlier explained, see supra, at 467-470, individual reliance questions will not overwhelm questions common to the class, for the class members’ claims will have failed on their merits, thus bringing the litigation to a close. Therefore, just as a plaintiff class’s inability to prove materiality creates no risk that individual questions will predominate, so even a definitive rebuttal on the issue of materiality would not undermine the predominance of questions common to the class.
We recognized as much in Basic itself. A defendant could “rebut the [fraud-on-the-market] presumption of reliance,” *482 we observed in Basic, by demonstrating that “news of the [truth] credibly entered the market and dissipated the effects of [prior] misstatements.” 485 U. S., at 248-249. We emphasized, however, that “[p]roof of that sort is a matter for trial” (and presumably also for a summary-judgment motion under Federal Rule of Civil Procedure 56). 485 U. S., at 249, n. 29.[11] The District Court thus correctly reserved consideration of Amgen’s rebuttal evidence for summary judgment or trial. It was not required to consider the evidence in determining whether common questions predominated under Rule 23(b)(3).
⅜ ⅜ ⅜
For the reasons stated, the judgment of the Court of Appeals for the Ninth Circuit is affirmed.

It is so ordered.

 Part IV of Justice Blackmun’s opinion in Basic—the part endorsing the fraud-on-the-market theory—was joined by Justices Brennan, Marshall, and Stevens. Together, these Justices composed a majority of the quorum of six Justices who participated in the case. See 28 U. S. C. § I (“The Supreme Court of the United States shall consist of a Chief Justice of the United States and eight associate justices, any six of whom shall constitute a quorum.”).

 Although describing Basic’s adoption of the fraud-on-the-market presumption of reliance as “questionable,” Justice Thomas’ dissent acknowledges that “the Court has not been asked to revisit” that issue. Post, at 489, n. 4. See also post, p. 482 (Alito, J., concurring).

 Amgen’s allegedly improper marketing practices have sparked federal and state investigations and several whistleblower lawsuits. See Dye, Amgen To Pay $762 Million in Drug-Marketing Case, Washington Post, Dec. 19, 2012, p. A17.

 We agree with Justice Thomas that “[m]ateriality was central to the development, analysis, and adoption of the fraud-on-the-market theory both before Basic and in Basic itself.” Post, at 502. We disagree, however, that the history of the fraud-on-the-market theory’s development “confirms that materiality must be proved at the time that the theory is invoked—i. e., at certification.” Ibid. As explained below, see infra, at 468-470, proof of materiality is not required prior to class certification because such proof is not necessary to ensure satisfaction of Rule 23(b)(3)’s predominance requirement.

 Justice Thomas is also wrong in arguing that a failure of proof on the issue of materiality would demonstrate that a Rule 10b-5 class action “should not have been certified in the first place.” Post, at 487. Quite the contrary. The fact that such a failure of proof resolves all class members’ claims once and for all, leaving no individual issues to be adjudicated, confirms that the original certification decision was proper.

 Amgen advances a third argument founded on modern economic research tending to show that market efficiency is not ‘“a binary, yes or no question.’” Brief for Petitioners 32 (quoting Langevoort, Basic at Twenty: Rethinking Fraud on the Market, 2009 Wis. L. Rev. 151, *471 167). Instead, this research suggests, differences in efficiency can exist within a single market. For example, a market may more readily process certain forms of widely disseminated and easily digestible information, such as public merger announcements, than information more difficult to acquire and understand, such as obscure technical data buried in a filing with the Securities and Exchange Commission. See, e. g., Macey & Miller, Good Finance, Bad Economics: An Analysis of the Fraud-on-the-Market Theory, 42 Stan. L. Rev. 1059,1083-1087 (1990); Stout, The Mechanisms of Market Inefficiency: An Introduction to the New Finance, 28 J. Corp. L. 635, 653-656 (2003). Amgen, however, never clearly explains how this research on market efficiency bolsters its argument that courts should require precertification proof of materiality. In any event, this case is a poor vehicle for exploring whatever implications the research Amgen cites may have for the fraud-on-the-market presumption recognized in Basic. As noted above, see swpra, at 463, Amgen conceded in its answer that the market for its securities is “efficient” and thus “promptly digest[s] current information regarding Amgen from all publicly available sources and re-flectes] such information in Amgen’s stock price.” Consolidated Amended Class Action Complaint ¶¶199-200; Answer ¶¶ 199-200. See also App. to Pet. for Cert. 40a (relying on the admission in Amgen’s answer and an unchallenged expert report submitted by Connecticut Retirement, the District Court expressly found that the market for Amgen’s stock was efficient). Amgen remains bound by that concession. See American Title Ins. Co. v. Lacelaw Corp., 861 F. 2d 224, 226 (CA9 1988) (“Factual assertions in pleadings and pretrial orders, unless amended, are considered judicial admissions conclusively binding on the party who made them.”); cf. Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez, 561 U. S. 661, 677 (2010) (“This Court has . . . refused to consider a party’s argument that contradicted a joint ‘stipulation [entered] at the outset of th[e] litigation.’” (quoting Board of Regents of Univ. of Wis. System v. Southworth, 529 U. S. 217, 226 (2000))). We thus find nothing in the cited research that would support requiring pre-certification proof of materiality in this case.

 As earlier noted, see supra, at 459, Amgen does not here contest Connecticut Retirement’s satisfaction of Rule 23(a)’s requirements.

 Accordingly, “the timing of the relevant stock trades” is indeed an “element” of the fraud-on-the-market theory. Post, at 490, n. 6 (opinion of Thomas, J.). Unlike Justice Thomas, however, see ibid., we do not understand the United States as amicus curiae to take a different view. See Brief for United States 15, n. 2 (“Precise identification of the times when the alleged misrepresentation was made and the truth was subsequently revealed is . . . important to ensure that the named plaintiff has traded stock during the time the stock price allegedly was distorted by the defendant’s misrepresentations.”).

 Scouring the Court’s decision in Basic for some semblance of support for his position, Justice Scalia attaches portentous significance to Basic’s statement that the District Court’s class-certification order, although “ ‘appropriate when made,’ ” was “ ‘subject on remand to such adjustment, if any, as developing circumstances demanded].’ ” Post, at 484 (quoting Basic, 485 U. S., at 250). This statement, however, merely reminds that certifications are not frozen once made. Rule 23 empowers district courts to “alte[r] or amen[d]” class-certification orders based on circumstances developing as the ease unfolds. Rule 23(c)(1) (1988). See also Rule 23(c)(1)(C) (2013).

 Justice Scalia suggests that the Court’s approach in Basic might have been influenced by the obsolete view that “ ‘Rule 23 . . . set[s] forth a mere pleading standard.” ” Post, at 484 (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U. S. 338, 350 (2011)). The opinion in Basic, however, provides no indication that the Court perceived any issue before it to turn on the question whether a plaintiff must merely plead, rather than “affirmatively demonstrate,” her satisfaction of Rule 23⅛ certification requirements. Dukes, 564 U. S., at 350.

 Amgen attempts to minimize the import of this statement by noting that it was made prior to a 2003 amendment to Rule 23 that eliminated district courts’ authority to conditionally certify class actions. See Advisory Committee’s 2003 Note on subd. (c)(1) of Fed. Rule Civ. Proc. 23, 28 U. S. C. App., p. 144. Nothing in our opinion in Basic, however, suggests that the statement relied in any way on district courts’ conditional-certification authority. To the contrary, the Court in Basic stated: “Proof of that sort [i. e., that news of the truth had entered the market and dissipated the effects of prior misstatements] is a matter for trial, throughout which the District Court retains the authority to amend the certification order as may be appropriate.” 485 U. S., at 249, n. 29 (emphasis added). Rule 23(c)(1)(C) continues to provide that a class-certification order “may be altered or amended before final judgment.”