**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2014**

Elisabeth A. Shumaker
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JOHN WOLFE, individually and on behalf of all others similarly situated; MIKE MARNHOUT, individually and on behalf of all others similarly situated; SHAZI IQBAL, individually and on behalf of all others similarly situated,

      Plaintiffs - Appellants,

v.

ASPENBIO PHARMA, INC., a Colorado corporation; RICHARD G. DONNELLY; GREGORY PUSEY; JEFFREY G. MCGONEGAL; MARK COLGIN; ROBERT CASPARI,

      Defendants - Appellees.

No. 12-1406
(D.C. No. 1:11-CV-00165-REB-KMT)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **HOLLOWAY**[**] and **HOLMES**, Circuit Judges.

---

[*]    This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]    The late Honorable William J. Holloway, Jr., United States Senior Circuit Judge, participated as a panel member when oral argument was heard on this case but passed away before having an opportunity to vote on or otherwise participate in the consideration of this order and judgment. "The practice of this court permits the remaining two panel judges if in agreement to act as a quorum in resolving the appeal." *United States v. Wiles*, 106 F.3d 1516, 1516 n.* (10th

Plaintiffs John Wolfe, Mike Marnhout, and Shazi Iqbal filed a class action complaint against AspenBio Pharma, Inc. ("AspenBio") and several of its current and former executives. Suing on behalf of a putative class of all persons who purchased that company's common stock between February 2007 and July 2010, the plaintiffs (hereinafter "the Investors") alleged that AspenBio had violated section 10(b) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. Together, these provisions "prohibit fraudulent acts done in connection with securities transactions." *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1094–95 (10th Cir. 2003). The Investors also asserted "control person" claims under section 20(a) of the Act, 15 U.S.C. § 78t(a), against the individual defendants. The present appeal addresses only the section-10 allegations against AspenBio and Richard Donnelly (the company's Chief Executive Officer from the beginning of the class period until February 2009) and the control person claims against Mr. Donnelly and Jeffrey McGonegal (the company's Chief Financial Officer during the class period).

To state a claim under section 10(b) and Rule 10b-5, a complaint must

Cir. 1997); *see also* 28 U.S.C. § 46(c)–(d) (permitting a circuit court to adopt procedure allowing for the disposition of an appeal where remaining quorum of panel agrees on the disposition). The remaining panel members have acted as a quorum with respect to this order and judgment.

allege:

> (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.

*Amgen Inc. v. Conn. Retirement Plans & Trust Funds*, --- U.S. ----, 133 S. Ct. 1184, 1192 (2013) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, --- U.S. ----, 131 S. Ct. 1309, 1317 (2011)) (internal quotation marks omitted).  In the Private Securities Litigation Reform Act ("PSLRA"), Congress subjected the first and second of these elements to heightened pleading requirements.  *See* 15 U.S.C. §§ 78u-4(b)(1), 78u-4(b)(2); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007).

In the case on appeal, the district court granted AspenBio's Federal Rule of Civil Procedure 12(b)(6) motion to dismiss the Investors' claims based on a finding that the Investors failed to allege facts establishing the first element of a section-10 claim, the existence of a false or misleading statement.  We do not reach that issue, however.  "We have long said that we may affirm on any basis supported by the record, even if it requires ruling on arguments not reached by the district court or even presented to us on appeal."  *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1130 (10th Cir. 2011).  And we conclude that the Investors failed to adequately plead here the second element—*viz.*, scienter.  On that basis, and exercising jurisdiction under 28 U.S.C. § 1291, we **affirm** the judgment of

-3-

the district court.

**I**[1]

AspenBio is a self-described "bio-pharmaceutical company" whose business is the "discovery, development, manufacture, and marketing of novel proprietary products." Aplt. App. at 19 (Am. Compl., filed Aug. 23, 2011) (internal quotation marks omitted). The present litigation concerns alleged misrepresentations relating to one such product, a diagnostic test called "AppyScore." *Id.* at 14. AppyScore was conceived as a screening test that could help physicians rule out appendicitis in patients presenting the symptoms of that disease by testing for elevated levels of a specific protein. AspenBio began work on the test some time around 2003, and by early 2006, the company issued a press release announcing its work on the product and touting the potential market for a new appendicitis test.

In 2007, AspenBio issued a number of press releases relating to its ongoing research involving AppyScore. The allegedly false content of these releases, and of an additional comment made by Mr. Donnelly, forms the core of the Investors' claim. The first press release, issued on February 22 (the "February 2007 Press Release"), announced the results of three studies that had purportedly been

---

[1] Because we review here a decision granting a motion to dismiss, we must accept as true, for purposes of this appeal, all of the Investors' factual allegations in the amended complaint. *See Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

-4-

conducted in the preceding 30 months, as well as preliminary results of an

additional ongoing study.  The reported results were, by and large, extremely

promising.  Indeed, AspenBio reported that "[b]ased on the data obtained to-

date," AppyScore "appears able to identify patients with appendicitis at a very

high sensitivity level of 94% to 97%."[2]  *Id.* at 36.  In a second press release a few

months later (the "September 2007 Press Release"), AspenBio again struck an

optimistic tone, claiming that the large ongoing study referenced in its earlier

press release had been completed, and quoting Mr. Donnelly to the effect that this

study had demonstrated sensitivity for AppyScore of 98%.  In a presentation to

investors on May 22, 2007, Mr. Donnelly stated that, under the system of

categorization for appendices that AspenBio was using, cases were divided into

four numerical categories—with 1s being normal appendices, 4s reflecting highly

---

[2]     Sensitivity is one of several basic measures of a diagnostic's effectiveness.  The present case involves both sensitivity and the related concept of specificity.  Simply put,

> [i]n studies of diagnostic accuracy, the *sensitivity* of [a] test is estimated as the proportion of subjects *with* the target condition in whom the test is positive.  Similarly, the *specificity* of the test is estimated as the proportion of subjects *without* the target condition in whom the test is negative[.]

Food & Drug Administration ("FDA"), *Guidance for Industry & FDA Staff: Statistical Guidance on Reporting Results from Studies Evaluating Diagnostic Tests* 7–8 (Mar. 2007) (second and fourth emphases added), *available at* http://www.fda.gov/downloads/RegulatingInformation/Guidances/ucm071287.pdf (last visited Oct. 16, 2014).

symptomatic cases of appendicitis, and 2s and 3s representing the difficult-to-detect cases in between—and AppyScore was capable of detecting 2s and 3s.

In their amended complaint, the Investors alleged that these sanguine reports were in fact false,[3] and that they actually reflected "rigged studies designed to make AppyScore look good rather than to test its capabilities, so that AspenBio could sell its stock at [an] inflated price." *Id.* at 44. The Investors alleged that these false reports artificially inflated the price of AspenBio stock, and that when the truth came out, the Investors were left in the lurch.

As the Investors tell it, the facade ultimately began to crumble when AspenBio undertook the process of seeking FDA approval to market AppyScore in the United States. When AspenBio released the results of its first clinical trial (*i.e.*, its first "official" trial, conducted pursuant to FDA regulations, and intended for use in a regulatory submission) in January 2009, "[t]he reported results were devastating," *id.* at 55, and the company's stock lost more than 75% of its value in a single day. Even then, however, AspenBio purportedly refused to give up the ghost, choosing instead to issue yet another press release, this one claiming that the first clinical trial's negative results could be traced to "an unexpected number of patients who presented with mild appendicitis when compared to peer reviewed

---

[3] As noted above, the district court found that the Investors failed to allege sufficient facts to establish falsity; we take no position on that question for purposes of the present appeal.

published literature statistics." *Id.* at 57. It was not until July 2010, when AspenBio released the unimpressive results of its second clinical trial, that the scales allegedly fell fully from the market's eyes. AspenBio's stock price fell a further 27%.

The Investors filed a putative class action against AspenBio on the basis of the foregoing allegations, asserting claims under sections 10(b) and 20(a) of the Act, as well as under SEC Rule 10b-5. AspenBio filed a motion to dismiss pursuant to Rule 12(b)(6). The district court granted the motion, finding that the Investors failed to state a claim under the heightened pleading standards established by the PSLRA. It dismissed the Investors' complaint, and entered judgment for AspenBio. The Investors timely filed this appeal.

## II

### A

We review de novo a district court's dismissal of a complaint pursuant to Rule 12(b)(6). *See McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 997 (10th Cir. 2002). In doing so we "accept as true 'all well-pleaded factual allegations in [the] complaint and view these allegations in the light most favorable to the plaintiff.'" *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1280 (10th Cir. 2013) (quoting *Kerber v. Qwest Grp. Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011)).

To adequately plead scienter under the PSLRA's heightened pleading standard, a complaint must, "with respect to each act or omission alleged to

violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). In a securities fraud case, that state of mind is "a mental state embracing intent to deceive, manipulate, or defraud, or recklessness." *In re Level 3 Commc'ns, Inc. Secs. Litig.*, 667 F.3d 1331, 1343 (10th Cir. 2012) (quoting *Adams*, 340 F.3d at 1105) (internal quotation marks omitted). Although "[a]n inference of scienter 'need not be irrefutable,' . . . we will draw a 'strong inference' of recklessness only if, based on plaintiff's allegations, 'a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* (quoting *Tellabs*, 551 U.S. at 324).

**B**

In the present case, the Investors failed to adequately allege that the challenged statements—which we assume *arguendo* were false or misleading—were made intentionally or recklessly. The Investors' theory of scienter in this case ultimately turns on Mr. Donnelly's knowledge. They claim that Mr. Donnelly knew that the statements in the February 2007 and September 2007 Press Releases, as well as his own statements to investors about AppyScore's ability to detect 2s and 3s, were untrue at the time they were made, and they argue that this knowledge can be imputed to AspenBio as well. Unfortunately for the Investors, they fail to allege facts that could establish that

Mr. Donnelly had the requisite mental state.

Indeed, the Investors rely solely on two allegations in the amended complaint to establish Mr. Donnelly's scienter. First, the Investors argue that because Mr. Donnelly was the CEO of AspenBio, and because AppyScore was a singularly important project for that company, it is a reasonable inference that "[Mr.] Donnelly would closely monitor it." Aplt. Opening Br. at 68 (citing Aplt. App. at 22, 26). Second, they rely on the allegation that in late August 2005, Roger Hurst, the founder and former CEO of AspenBio, told Mr. Donnelly that AppyScore "just wasn't working." *Id.* (citing Aplt. App. at 34–35). These two allegations simply cannot carry the Investors over the PSLRA's heightened bar.

With respect to the Investors' first argument—in essence that we should infer Mr. Donnelly's knowledge from the fact of his position and the importance of AppyScore to AspenBio—we have previously rejected the notion that knowledge may be imputed solely from an individual's position within a company. *See City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1263–64 (10th Cir. 2001) ("[A]llegations that a securities fraud defendant, because of his position within the company, must have known a statement was false or misleading are precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate to withstand Rule 9(b) scrutiny. Generalized imputations of knowledge do not suffice, regardless of defendants' positions within the company." (second alteration in original)) (quoting *In re Advanta*

-9-

*Corp. Secs. Litig.*, 180 F.3d 525, 539 (3d Cir. 1999), *abrogated on other grounds by Tellabs*, 551 U.S. at 325) (internal quotation marks omitted).  Although "standing alone, the fact that a defendant was a senior executive in a company cannot give rise to a strong inference of scienter," Mr. Donnelly's status as AspenBio's CEO is nonetheless "a fact relevant in our weighing of the totality of the allegations."  *Adams*, 340 F.3d at 1106.  Accordingly, we turn to the Investors' other argument, focusing on Mr. Hurst's alleged remark that AppyScore "just wasn't working."

We agree with the district court that Mr. Hurst's comment was "so vague and global as to be unhelpful as a benchmark for scienter."  Aplt. App. at 112 n.20 (Order Granting Mot. to Dismiss, filed Sept. 13, 2012).  Although Mr. Hurst may have communicated in this remark that AppyScore "wasn't working," his statement provided no insight as to *why* it wasn't working.  It is of course possible that this observation referred to the problems relating to achieving the desired sensitivity and specificity that were later revealed in the clinical trials, but it would eviscerate the heightened PSLRA pleading standard to find that this mere *possibility* satisfies the requirement that a plaintiff "state *with particularity* facts giving rise to a *strong inference* that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A) (emphases added).  Moreover, Mr. Hurst's remark was made in August 2005, fully a year and a half before the first challenged statement in this litigation, in February 2007.  Thus, even if Mr. Hurst

had identified the problems with AppyScore as of August 2005 with greater particularity, the alleged facts would provide us with no basis for inferring that these problems *continued* eighteen months later. And, even supposing these problems continued, we would still be left to speculate as to whether Mr. Donnelly *knew* that the problems continued when the challenged statements were made.

All of these details belie the Investors' contention that the present case is "indistinguishable" from *Adams*. Aplt. Opening Br. at 68. As the Investors note, we concluded in *Adams* that the complaint in that case had adequately pleaded scienter as to a defendant whose knowledge was based on communications from another employee. *See Adams*, 340 F.3d at 1105. Yet *Adams* is clearly distinguishable. The information provided to the *Adams* defendant—who served as the chief financial officer of the company—about the profitability of a company enterprise was virtually the obverse of what the defendant subsequently stated to be true, giving rise to "a strong inference that [the defendant] acted with intent to deceive." *Id.* In the present case, in order to conclude that Mr. Donnelly actually knew that the challenged statements were false, and thus possessed the requisite scienter, one would need to make a series of inferences that were unnecessary in *Adams*: about the nature of the problem adverted to by Mr. Hurst, about the continued existence of that problem 18 months later when the first of the challenged statements was made, and about Mr. Donnelly's knowledge at that

-11-

later time.

We have previously held that allegations of scienter are insufficient when the complaint requires the court to "stack inference upon inference to even conclude that the statements were false—much less that defendants knew or were reckless in not knowing they were false." *Level 3 Commc'ns*, 667 F.3d at 1345. The critical fact alleged here—Mr. Hurst's statement that AppyScore wasn't working—is "open to multiple interpretations," and "even with the benefit of hindsight" it is not clear "whether a conflict actually existed between" the challenged statements and that observation. *Id.* Accordingly, the Investors failed to meet the heightened pleading standard set by the PSLRA, and failed to state a claim under section 10(b) and Rule 10b-5.

## C

Because we conclude that the Investors' amended complaint failed to allege a primary violation of the securities laws, the section-20(a) control person claims necessarily also fail. *See id.* at 1347 (citing *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).

## III

For the foregoing reasons, we **AFFIRM** the district court's order dismissing the Investors' amended complaint.[4]


Entered for the Court


Jerome A. Holmes
Circuit Judge

---

[4] One motion remains pending in this case—a motion by the Investors to take judicial notice of two press releases issued by AspenBio. AspenBio does not oppose this motion, and notes that it actually moved in the district court to take judicial notice of these same press releases (among others), a motion that the district court granted. We **GRANT** this uncontested motion.