COOK, Circuit Judge,
dissenting.
Recent Supreme Court precedent clearly holds that “plaintiffs wishing to proceed through a class action must actually prove — not simply plead — that their proposed class satisfies each requirement of Rule 23.” Halliburton Co. v. Erica P. John Fund, Inc., — U.S. -, 134 S.Ct. 2398, 2412, 189 L.Ed.2d 339 (2014); see also Comcast Corp. v. Behrend, — U.S. -, 133 S.Ct. 1426, 1432, 185 L.Ed.2d 515 (2013); Amgen Inc. v. Conn. Ret. Plans & Trust Funds, — U.S. -, 133 S.Ct. 1184, 1194, 185 L.Ed.2d 308 (2013); Wal-Mart Stores, Inc. v. Dukes, — U.S. -, 131 S.Ct. 2541, 2551, 180 L.Ed.2d 374 *528 (2011). District courts may certify a class only where the plaintiff presents “evidentiary proof’ sufficient to withstand “rigorous analysis” of Rule 23’s requirements. Comcast, 133 S.Ct. at 1432. Nothing about the district court’s analysis here was rigorous, and the majority papers over this abuse of discretion by claiming that any further inquiry would result in an impermissible “dress rehearsal” for trial. More often than not, however, a district court’s “ ‘rigorous analysis’ will entail some overlap with the merits of the plaintiffs underlying claim.” Dukes, 131 S.Ct. at 2551-52 (quoting Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). And this case is no exception to that rule. Because the majority opinion conflicts with the Supreme Court’s Rule 23 jurisprudence, I dissent.
Plaintiffs proclaim that Align is “snake oil” that produces nothing more than a placebo effect. But Plaintiffs offer no proof in support of this argument, and all the available evidence tends to show the opposite: that consumers benefit more or less from Align based on their individual gastrointestinal health. P & G’s scientific studies and anecdotal evidence tend to show, at the very least, that patients suffering from irritable bowel syndrome (IBS) benefit from Align. Plaintiffs tacitly acknowledge as much in their amended complaint, challenging the design of these studies and arguing that P & G relies on an impermissible string of inferences to conclude that Align also benefits “healthy” people.
Plaintiffs’ attempt to distinguish Align’s impact on IBS sufferers from its effect on the general population exposes the flaw in their proposed class definition. At this stage, Plaintiffs must demonstrate that they can disprove Align’s efficacy for every member of the class at one time. The class certified by the district court includes all consumers who purchased Align, IBS patients and “healthy” consumers alike. Because the evidence tends to show that these two groups respond differently to Align, Plaintiffs have failed to meet their burden of showing that their theory of liability lends itself to common investigation and resolution. See Dukes, 131 S.Ct. at 2551 (stating that the benchmark for commonality is a classwide proceeding’s ability to generate common answers rather than counsel’s ability to formulate common questions).
Furthermore, Plaintiffs offer no proof that the benefits associated with Align result solely from a placebo effect. Their expert, Dr. Komanduri, expressed no opinion on the question and declined to confront any of P & G’s studies directly. He dismissed all these trials as too unscientific, although he has yet to study the product himself and acknowledges that the IBS symptoms of at least one of his patients improved after taking Align. In lieu of an expert opinion, Dr. Komanduri promised to design and conduct a clinical trial that will prove definitively whether Align works as advertised, notwithstanding the experts who already conclude that it works for at least some consumers. With nothing more than that promise, the district court certified a class of millions across five states. In doing so, the court impermissibly shifted the burden to P & G, forcing it to disprove the commonality and predominance elements of Rule 23.
To avoid confronting these flaws, the majority quotes Amgen’s admonition that “[m]erits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.” 133 S.Ct. at 1195. But whether Align works similarly for each class member is relevant to certification and therefore not beyond the scope of *529 the court’s rigorous analysis. See Dukes, 131 S.Ct. at 2551-52 (“The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiffs cause of action.” (quoting Falcon, 457 U.S. at 160, 102 S.Ct. 2364)). If Align works to varying degrees — or at all — depending on each member’s unique physiology, then the question of Align’s efficacy involves myriad individual inquiries. See Comcast, 133 S:Ct. at 1432 (“The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).”). This fundamental defect will not disappear by allowing Plaintiffs to define the question at an impossibly high level of abstraction. As the case proceeds, the problems with the district court’s certification order will become painfully clear. Either the court will have to whittle down the class definition every time P & G produces a study showing that patients with a certain makeup benefit from Align or the court must award judgment to P & G and preclude class members with colorable claims from recovery because it defined the class too broadly in the first place.
By discounting the evidence presented at the certification stage, moreover, the majority affirms a class definition that includes a clutch of members without standing. E.g., Kohen v. Pac. Inv. Mgmt. Co. LLC, 571 F.3d 672, 677 (7th Cir.2009) (“[A] class should not be certified if it is apparent that it contains a great many persons who have suffered no injury at the hands of the defendant....” (citations omitted)); Denney v. Deutsche Bank AG, 443 F.3d 253, 264 (2d Cir.2006) (“The class must therefore be defined in such a way that anyone within it would have standing.”). The class definition includes all purchasers of Align despite the fact' that Plaintiffs offer no proof to rebut the studies showing that the product improves digestive health for IBS patients. The only evidence before the court shows that IBS patients suffered no injury (because Align works as-advertised for them), and therefore Plaintiffs have failed to show a properly defined class. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (“[Ejach element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.”). Unless Plaintiffs muster some evidence rebutting the IBS studies, their claim is already doomed.
For these reasons, the Supreme Court requires plaintiffs to affirmatively prove that common questions both exist and predominate. Though Plaintiffs artfully frame the question in a binary fashion, a rigorous analysis of their evidence shows that resolution of the Plaintiffs’ question cannot apply universally to all class members. Plaintiffs offer nothing in support of their claim that Align benefits no one. Instead, they nitpick P & G’s competent evidence, trot out an expert without any opinion as to the supplement’s efficacy, and promise to conduct the definitive trial of Align that accounts for all variables of human physiology. Dukes and its progeny teach us that this is insufficient to justify class certification. I must dissent.