Michael COLE, individually and on behalf of all others similarly situated, Plaintiff,

v.

GENE BY GENE, LTD., a Texas Limited Liability Company d/b/a Family Tree DNA, Defendant.

Case No. 1:14–cv–00004–SLG

United States District Court, D. Alaska.

Signed 07/28/2017

Alexander Glenn Tievsky, Jay Edelson, Rafey S. Balabanian, Benjamin H. Richman, Courtney Christine Booth, David I. Mindell, Edelson PC, James Dominick Larry, Benesch Friedlander Coplan & Aronoff LLP, Chicago, IL, Douglas K. Mertz, Law Office of Douglas K. Mertz, Juneau, AK, for Plaintiff.

Matthew R. Wojcik, E. Pennock Gheen, Holly D. Brauchli, Bullivant Houser Bailey PC, Seattle, WA, Timothy J. Petumenos, Law Office of Tim Petumenos, LLC, Anchorage, AK, for Defendant.

## ORDER RE MOTION FOR CLASS CERTIFICATION

Sharon L. Gleason, UNITED STATES DISTRICT JUDGE

Before the Court is Plaintiff Michael Cole's Motion for Class Certification and Appointment of Class Counsel.[1] Defendant Gene by Gene opposed the motion,[2] to which Mr. Cole replied.[3] Oral argument was not requested and was not necessary to the Court's decision.

### BACKGROUND

Gene by Gene sells at-home DNA testing kits, which allow for comparisons between individuals to determine whether the individuals are related. There are three varieties of tests: Y–DNA, mtDNA, and autosomal DNA.[4] Along with one of the three tests, Gene by Gene sends its customers an at-home testing kit containing two vials, two cheek swabs, an optional release form, a welcome letter, instructions, and a return envelope.[5] The release form grants Gene by Gene permission to provide the customer's name and email address to "genetic matches," along with sufficient information about the customer's DNA test results to explain the nature of the genetic matches.[6] After the customer has returned the kit and the sample has been tested, the customer can

---

1. Docket 138 (Redacted Cole Mot. for Class Cert.): Docket 140–1 (Unredacted Cole Mot. for Class Cert.).

2. Docket 146 (Redacted Gene by Gene Opp'n): Docket 170 (Unredacted Gene by Gene Opp'n).

3. Docket 150 (Redacted Cole Reply): Docket 162 (Unredacted Cole Reply).

4. Docket 169 (sealed E. Greenspan Dep.) at 6–7.

5. Docket 140–4 (sealed Blankfeld Dep.) at 10.

6. Docket 139–4 (Cole's Release Form) at 2: see also Docket 140–4 (sealed Blankfeld Dep.) at 11 ("Q: And in terms of the contents of that kit, the two vials, the two swabs, the release form, the letter, the instructions and the return envelope, that's the same for each test that's ordered, correct? A: Correct."): Docket 139–5 (other release forms). The Court notes that at least one of the release forms in the record does not expressly grant Gene by Gene the right to share any genetic testing result. See Docket 139–5 at 2.

view his results on the Family Tree DNA website.[7] The customer then has the option of joining "projects," which are websites run by volunteer administrators that allow customers to connect to individuals with similar surnames, genetic characteristics, or regional histories.[8] Terry Barton, a project administrator for Gene by Gene, runs the website WorldFamilies.net, which hosts more than 1600 projects sites, and offers varying degrees of support to the volunteer administrators.[9] When a customer joins a project, such as those hosted by WorldFamilies.net, Mr. Cole alleges that the customer's name, email address, oldest known ancestor, DNA testing kit number, and DNA test results are automatically shared with the group administrators.[10] Mr. Cole alleges that this information is shared without the customer's consent. Moreover, Mr. Cole asserts that by default, customers' kit numbers and DNA test results are posted on publicly available project websites.[11] Mr. Cole specifically alleges that if a customer joins a project administered by Terry Barton, the customer's test results and contact information are transmitted to WorldFamilies.net servers and databases, where the results may be displayed on World Families' public website.[12] Mr. Cole maintains that he is one of hundreds of individuals in Alaska who "purchased a test from Gene by Gene and joined a project, only to find that doing so had resulted in the disclosure of his Genetic Information." [13]

Mr. Cole now moves the Court to certify the following class:

> **Project Membership Class:** all individuals who purchased a DNA test from Gene by Gene, Ltd. and who executed a release form and joined a Family Tree DNA "project" between May 13, 2012 and August 1, 2016, while residing in the State of Alaska.

Mr. Cole further moves to certify the following subclass:

> **Worldfamilies Subclass:** all Project Membership Class members who joined a Family Tree DNA "project" administrated or co-administered by Terry Barton and/or WorldFamilies.net.[14]

Gene by Gene opposes Mr. Cole's motion and argues that class certification must be denied because: (1) Mr. Cole's claim is unique: therefore, there are issues with commonality and typicality: (2) other class members might be entitled to actual damages that Mr. Cole is "expressly uninterested in representing": (3) individual interests predominate over potential class interests and a class action is not superior to other methods to adjudicate this controversy: and (4) "the application of solely punitive damages, in the absence of alternate harm, is overly burdensome and disproportionate." [15]

---

7. Docket 140–5 (sealed E. Greenspan Dep.) at 14. Gene by Gene does business as Family Tree DNA. The Court uses the names interchangeably.

8. Docket 140–3 (sealed B. Greenspan Dep.) at 7–8.

9. Docket 140–8 (sealed Barton Email to Gene by Gene) at 2.

10. Docket 140–5 (sealed E. Greenspan Dep.) at 13 ("[I]n general, when the customer's results come back, they will get notified, the customer themselves, as well as a group administrator that is managing that sample."): Docket 140–4 (sealed Blankfeld Dep.) at 27 ("Q: [I]f a new person becomes a project administrator, they are then able to view the information about project members that is also available to the original project administrator, right? A: Correct. Q: And that would include name, E-mail if available, kit number, as well as earliest known ancestor and test result information? A: Correct.").

11. Docket 140–1 (sealed Cole Mot. for Class Cert.) at 11 (citing Docket 140–7 (sealed Blacker-

by Dep.)) at 9 ("A: I'm pretty sure the default is to have the kit number show. Q: And what about the relevant portions of the DNA test results, those are generally posted, correct?" A: Generally.").

12. *See* Docket 140–1 at 11 (citing Docket 140–3 (sealed B. Greenspan Dep.) at 17–18 (referring to a printout of the WorldFamilies website, which "displays project information")). Bennett Greenspan's deposition supports a finding that the WorldFamilies website publically displays the same information as would be available on "a Family Tree DNA cookie-cutter website." The record does not contain a description of what the site actually displays.

13. Docket 140–1 at 11.

14. Docket 140–1 at 13.

15. Docket 170 (sealed Gene by Gene Opp'n) at 6.

504

## DISCUSSION

### I. Jurisdiction

This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### II. Legal Standard

 "The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'"[16] Pursuant to Federal Rule of Civil Procedure 23(a), a district court may certify a class only if (1) it is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative party are typical of the claims of the class, and (4) the representative party will fairly and adequately protect the interests of the class.

Before certifying a class, a court must also find that one of the requirements of Rule 23(b) has been meet. Here, Mr. Cole relies on Rule 23(b)(3), which requires finding (1) that questions of law or fact common to the class predominate over any questions affecting individual class members; and (2) that a class action is superior to other available methods for resolving the controversy.

 The party seeking class certification "bears the burden of demonstrating that the requirements of Rule 23(a) and (b) are met."[17] "[A] district court facing a class certification motion is required to conduct 'a rigorous analysis' to ensure that the Rule 23 requirements are satisfied."[18] Here, as explained below, the Court finds that Mr. Cole has not satisfied the requirements of Rule 23(b)(3)—predominance and superiority—and will deny the motion on that basis.[19]

#### a. Predominance

 The predominance requirement is met where the proposed class's interests are "sufficiently cohesive to warrant adjudication by representation."[20] The presence of commonality alone, as required under Rule 23(a), is not sufficient to fulfill Rule 23(b)(3)'s predominance requirement.[21] "Rule 23(b)(3) imposes a 'far more demanding' standard than [Rule] 23(a)(2)."[22] Rule 23(b)(3) requires that common questions predominate over individual questions. To make this determination, a court "must identify the issues involved in the case and determine which are subject to generalized proof, and which must be the subject of individualized proof."[23]

Mr. Cole brings this action against Gene by Gene for violating Alaska's Genetic Privacy Act. To prevail in a class action, each plaintiff must demonstrate that Gene by Gene disclosed the results of that customer's DNA analysis and that it did so without that customer's informed and written consent.

Mr. Cole has demonstrated that this case involves certain questions common to the proposed class and subclass. For example, whether Gene by Gene's DNA testing constitutes a "DNA analysis" under the Act is a

---

**16.** *Wal–Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 348, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979)).

**17.** *Connecticut Retirement Plans and Trust Funds v. Amgen Inc.,* 660 F.3d 1170, 1174–75 (9th Cir. 2011) (quoting *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.,* 593 F.3d 802 (9th Cir. 2010)).

**18.** *Id.* at 1175 (quoting *Gen. Tel. Co. of Sw. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

**19.** Accordingly, the Court does not reach the Rule 23(a) requirements. *See, e.g., Friedman v. Old Republic Home Prot. Co.,* No. EDCV121833AGOPX, 2015 WL 9948093, at *5 (C.D. Cal. May 18, 2015) ("Because the Court does not find certification of the proposed class is appropriate under Rule 23(b)(3) or (2), the Court does not address the Rule 23(a) requirements.").

**20.** *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997).

**21.** *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1022 (9th Cir. 1998).

**22.** *Stockwell v. City and Cnty. of San Francisco,* 749 F.3d 1107, 1113 (9th Cir. 2014) (citing *Amchem,* 521 U.S. at 624, 117 S.Ct. 2231).

**23.** *Levias v. Pac. Mar. Ass'n,* No. 08-CV-1610-JPD, 2010 WL 358499, at *7 (W.D. Wash. Jan. 25, 2010); *In re Dynamic Random Access Memory Antitrust Litigation,* 2006 WL 1530166, at *7 (N.D. Cal. June 5, 2006).

common question that "can be resolved uniformly across the Classes." [24] The testimony of Elliot Greenspan, creator of the software Family Tree DNA uses,[25] indicates that the three types of tests Gene by Gene offers are substantially similar. Mr. Greenspan explains that all three tests take millions of data points, put them into a database, and use algorithms to match the customer with his or her genetic match.[26] There is also evidence that "the information that's available about customers' test results" is the same, regardless of which test that customer purchased.[27] And although Gene by Gene offers three different types of genetic testing, each has the same objective: matching the customer with his or her genetic matches. Accordingly, whether Gene by Gene's DNA tests constitute DNA analyses is a common question among the proposed class members.

Whether Gene by Gene's alleged disclosures were for profit is another question that is common to the proposed classes.[28] Bennett Greenspan, Gene by Gene's Founder and President,[29] testified that when customers join projects, Gene by Gene "increases [its] ability to reach out to other potential test takers." [30]

The Court agrees with Mr. Cole that whether Gene by Gene performs genetic testing and whether the alleged disclosures resulted in profit are questions common to the proposed class and subclass.

Mr. Cole also argues that "[w]hether Gene by Gene's sharing of its customer's Genetic Information constitutes a 'disclosure' is common to each member of the Classes" because "*every* time a customer joined a project, the customer's testing results were automatically provided to the relevant group administrators." [31] But Gene by Gene responds that a project administrator's access to a customer's testing results depends on the privacy settings selected by the customer himself.[32] Accordingly, Gene by Gene maintains that each class member would need to prove the group administrator actually logged in and accessed the results.[33]

■ To show that the alleged disclosures were uniform and automatic, Mr. Cole cites Elliott Greenspan's deposition testimony. He testified, "[W]hen the customer's results come back, they will get notified, the customer themselves, as well as a group administrator that is managing that sample, if there is one." [34] Mr. Greenspan did not testify that group administrators automatically receive each customer's full test results. Rather, it appears the notification simply informs the administrator whenever "a new result has come in that matches [their group]." Whether additional information is provided depends on several factors, including whether the customer "signed the release form," whether the customer joined any projects, and whether the customer kept his privacy settings on private, public, or group.[35] These issues are

24. Docket 140–1 (sealed Cole Mot. for Class Cert.) at 16. *Cf.* Docket 170 at 8.

25. *See* Docket 81 (Brauchli Decl.) at 3, ¶ 6.

26. Docket 169 (sealed E. Greenspan Dep.) at 6–7 (comparing the testing process for Y–DNA products, mtDNA, and Big Y).

27. Docket 140–4 (sealed Blankfeld Dep.) at 29.

28. Docket 140–1 (sealed Cole Mot. for Class Cert.) at 21.

29. *See* Docket 110 (B. Greenspan Decl.) at 2.

30. Docket 140–3 (sealed B. Greenspan Dep.) at 12.

31. Docket 140–1 (sealed Cole Mot. for Class Cert.) at 17, 18 (emphasis in original).

32. Docket 170 (sealed Gene by Gene Opp'n) at 9.

33. Docket 170 at 9.

34. Docket 140–5 (sealed E. Greenspan Dep.) at 13.

35. *See* Docket 140–5 at 13. Mr. Greenspan testified that there are three privacy settings: private, public, and group, Docket 169 at 15, and that a customer can turn his or her settings onto private for each project and still join groups. *Id.* at 16. *But see* Docket 152–2 (sealed B. Greenspan Dep.) at 10 (Q: Was there anything that Mr. Cole could have done to change the types of information that were viewable to Mr. Taylor on the private group administrator page? A: Yes. He could have not joined the project."). Mr. Cole notes that privacy control was not available to the customers until November 11, 2014—two years into the proposed class period. *See* Docket 162 at 9. However, there would still be a need for individualized determinations of when each proposed class member joined each project, whether

significant aspects of the case and require individualized proof, weighing against a finding that common questions predominate.

Whether each proposed class member gave informed and written consent to disclosure could depend on several individualized determinations: whether the customer signed a release form, the precise language of that particular customer's form, and the information provided to that customer about potential disclosures of genetic information. Bennett Greenspan testified that when a customer first orders a test kit, he or she receives a release form, which gives Family Tree DNA the customer's "consent to match them against other people in the database so they can see who they are related to." [36] He describes the release form as a "mutual opt-in" form. Max Blankfeld, one of the founders of Gene by Gene and its current Chief Operating Officer,[37] explained that "[t]he person that did not sign the release would not have their information disclosed." [38] But the record before the Court demonstrates variations in the terms of release.[39] As a result, it appears that different customers signed different forms and may have consented to different disclosures. In short, individualized determinations may be required as to the consent form each customer signed, which could be different for each project the customer joined.

The individualized proof that would be required to establish each customer's consent, together with the individualized proof needed to demonstrate Gene by Gene's disclosure of each customer's test results, supports a finding that individual questions predominate over common questions, as both consent and disclosure are key elements of the Genetic Privacy Act.

Gene by Gene also argues that the "individual extent of damages is fatal to Plaintiff's certification motion." [40] It notes that this Court has previously interpreted Supreme Court precedent as requiring a plaintiff to "provide the district court with a method that is capable of measuring damages on a class-wide basis" when the class involves individual damages.[41] Mr. Cole responds that "the black letter rule is that individualized damage calculations generally do not defeat a finding that common issues predominate." [42] But "in particular cases, courts may examine whether individual damage concerns are unusually pertinent or unique," particularly where, as here, any actual damages "are not susceptible to a formulaic calculation." [43]

■ While "damage calculations alone cannot defeat certification," "plaintiffs must show that 'damages are capable of measurement on a classwide basis.' " [44] A proposed method for measuring individual damages should translate "the *legal theory of the harmful event* into an analysis of the economic impact *of that event*." [45]

---

the customer had access to the privacy control settings, and how each customer adjusted those settings.

**36.** Docket 106–2 (B. Greenspan Dep.) at 8.

**37.** *See* Docket 75 (Blankfeld Decl.) at 1.

**38.** Docket 128–7 (Blankfeld Dep.) at 9.

**39.** *Compare* Docket 139–4 (Cole Release Form) at 2 ("In the event I sign this document, I understand that FTDNA will share my name, email address and *relevant DNA results information* only with other persons who are a genetic match to me....") (emphasis added) *with* Docket 139–5 (Sample Release Form) at 2 ("I [ ] give permission to Family Tree DNA to make my name and e-mail address available to my genetic matches.").

**40.** Docket 170 (sealed Gene by Gene Opp'n) at 19.

**41.** Docket 170 (sealed) at 19 (citing *Wheeler v. United Servs. Auto. Ass'n*, 3:11–CV–00018–SLG, 2013 WL 4525312, at \*4 (D. Alaska Aug. 27, 2013)).

**42.** Docket 162 (sealed Reply) at 13 (citing W. Rubenstein, *Newberg on Class Actions* § 4:54 (5th ed.)).

**43.** W. Rubenstein, *Newberg on Class Action* § 4:54 (5th ed.).

**44.** *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) (quoting *Yokoyama v. Midland Nat. Life Ins. Co.*, 594 F.3d 1087, 1094 (9th Cir. 2010) and *Comcast Corp. v. Behrend*, 569 U.S. 27, 133 S.Ct. 1426, 1433–35, 185 L.Ed.2d 515 (2013)).

**45.** *Comcast*, 133 S.Ct. at 1435 (quoting Federal Judicial Center, Reference Manual on Scientific Evidence 432 (3d ed. 2011)) (emphasis in original).

■ To the extent that any of the approximately 900 proposed class members sustained actual damages such as employment, health, or insurance discrimination, Mr. Cole has not proposed any method for measuring such damages. A trial within a trial would likely ensue for each class member seeking actual damages so as to establish the proximate cause of the alleged actual damages and the extent of that customer's injury as it relates to Gene by Gene's liability.[46] While Mr. Cole does not need to show that each members' damages are identical, he must establish a means for measuring damages on a classwide basis that is traceable to Gene by Gene's conduct. With respect to actual damages, he has failed to present any such method.

The present case is distinguishable from the case Mr. Cole cites in his motion, *Harris v. comScore, Inc.*[47] In *Harris*, each class and subclass member agreed to the same form contract and engaged in a substantively identical process when they downloaded the defendant's software. The software then collected the same information from all computers on which it was downloaded. Based on these similarities, the district court determined that common questions predominated and class certification was appropriate.[48]

But here, the record indicates that proposed class members received different release forms, joined different projects run by different administrators, and could adjust the privacy settings to different degrees of disclosure. And to the extent that any of the approximately 900 proposed class members claims actual damages, such plaintiff would need to individually establish actual harm and connect that harm to Gene by Gene's alleged violation of the Genetic Privacy Act. The potential variance among the proposed class is substantially at odds with the uniformity of the proposed class in *Harris*.[49] For the foregoing reasons, the Court finds that Mr. Cole has not demonstrated that questions common to the class predominate over questions that require individualized proof.

### b. Superiority

■ "The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."[50] In the superiority analysis, a court determines whether a class action is the best vehicle for the litigation of the plaintiffs' claims. A class action is superior when the claimed damages for each individual claimant are too small to be pursued individually.[51] A class action may also be superior to other forms of litigation when it "achieve[s] economy] of time, effort, and expense" by consolidating duplicative individual lawsuits.[52] In making a determination as to whether a class action is the superior method of adjudication, Rule 23(b) directs a court to evaluate the

---

**46.** *See* Docket 1 (Compl.) at 13. Mr. Cole argues that Gene by Gene has not provided an example of a class member who changed his or her privacy setting or who is seeking actual damages. But the plaintiff bears the burden of satisfying the Rule 23 requirements. *See Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011). And while Gene by Gene has not identified a plaintiff who opted for a private setting or who is seeking actual damages at this point in the litigation, Mr. Cole's argument that disclosure automatically occurred for all class members is refuted by the availability of the privacy settings feature. And one or more of the proposed class member may seek actual damages as Mr. Cole's Complaint includes a prayer for actual damages, which is permitted by the Genetic Privacy Act. *See* Docket 1 (Compl.) at 15, ¶ 3.

**47.** *Harris v. comScore, Inc.*, 292 F.R.D. 579 (N.D. Ill. 2013).

**48.** *Harris*, 292 F.R.D. at 585, 590.

**49.** *See also Coulter–Owens v. Time, Inc.*, 308 F.R.D. 524, 534 (E.D. Mich. 2015) (certifying proposed class where subscribers could opt in or out of allowing defendant to disclose personal information because evidence established that misconduct occurred *regardless* of the subscribers' consent: thus individual determination of whether the plaintiff opted-in or out was not relevant to defendant's liability).

**50.** *Amchem*, 521 U.S. at 617, 117 S.Ct. 2231 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

**51.** W. Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed.).

**52.** *See* W. Rubenstein, *Newberg on Class Actions* § 4:67 (5th ed.) (citing Advisory Committee Note to 1966 Amendments, 39 F.R.D. 69, 102 (1966)).

following four factors: (1) the class members' interests in individually controlling the prosecution: (2) the extent and nature of any already-pending litigation concerning the controversy: (3) the desirability of concentrating claims in one judicial forum: and (4) the likely difficulties in managing a class action.

The first factor asks whether the cost of pursuing individual litigation is prohibitive, thereby rendering a class action the presumptively superior method of adjudication.[53] To gauge the costs of individual suits for comparative purposes, a court may look at (1) the complexity of the underlying substantive law: (2) the litigiousness of the defendant: and (3) the ability of the plaintiff to recover attorney's fees under the relevant statute.[54] Here, unlike securities law or patent litigation, this case involves a direct application of a relatively straightforward and concise law.[55] There is no indication in the record that Gene by Gene has been unduly litigious. And Alaska Rule of Civil Procedure 82 provides that "the prevailing party in a civil case shall be awarded attorney's fees," which may incentivize a plaintiff's attorney to pursue this type of case.

Moreover, the available remedy under the Alaska Genetic Privacy Act for a for-profit violation would appear to be sufficient to make an individual suit economical. Mr. Cole has alleged that Gene by Gene's violations resulted in profit, which could render him entitled to a minimum of $100,000 for his claim alone.[56] His claim satisfies the $75,000

threshold for diversity jurisdiction so that it may be individually pursued in federal court. Accordingly, the Court finds that given the amount of Mr. Cole's individual claim, this factor weighs strongly against class certification.

The second factor, the extent and nature of any already-pending litigation, is "intended to serve the purpose of assuring judicial economy and reducing the possibility of multiple lawsuits." [57] Here, neither party has apprised the Court of any other pending litigation against Gene by Gene for alleged violations of Alaska's Genetic Privacy Act. Accordingly, there is no indication that a class action would achieve greater economy of time, effort, or expense. Therefore, this factor weighs against finding that a class action is the superior method of adjudication.

The third factor evaluates the advantages of concentrating litigation in this forum. Here, the Genetic Privacy Act is an Alaska statute and each proposed class member is an Alaska resident. And yet there is no other case of this nature pending in the District of Alaska. The Court finds that, if there were to be other claims, concentrating litigation in one class action in the District of Alaska could be desirable, unless, as discussed above, there were variations in the releases, privacy settings, actual damages sought, or other individualized determinations that made a class action unwieldy.

The fourth factor examines the difficulties in managing the class action. The Ninth Cir-

**53.** *See Zinser v. Accufix Research Institute, Inc.,* 253 F.3d 1180, 1190–91 (9th Cir. 2001), *amended on denial of rehearing,* 273 F.3d 1266 (9th Cir. 2001) (citing *In re N. Dist. of Cal., Dalkon Shield IUD Prod. Liab. Litig.,* 693 F.2d 847, 856 (9th Cir. 1982), *abrogation on other grounds recognized in Baxter Healthcare Corp. v. U.S. Dist. Court for Cent. Dist. of Cal.,* 121 F.3d 714, 1997 WL 441397 (9th Cir. Aug. 4, 1997)) ("We recognize that a party with a claim of $50,000 might have a difficult time alone pursuing a complex products liability case. However, the *minimum* amount alleged to be in controversy for each putative class member does not argue persuasively for class certification."): *see also* W. Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed.).

**54.** W. Rubenstein, *Newberg on Class Actions* § 4:65 (5th ed.).

**55.** *Cf. Epifano v. Boardroom Business Products, Inc.,* 130 F.R.D. 295, 299 (S.D. N.Y. 1990) ("Although the damages the plaintiffs claim to have suffered range from $50,000 for Solar to $285,000 for Epifano, given the complexity of securities law cases, and the high cost of litigation, it is not clear that the cases would have been pursued without the class action possibility.").

**56.** *See* Docket 140-1 (sealed Cole Mot. for Class Cert.) at 20 ("Plaintiff firmly believes that [$100,-000] will ultimately be recovered.").

**57.** *Zinser,* 253 F.3d at 1191 (quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1780 at 568–70 (2d ed. 1986)).

cuit has held that "when the complexities of class action treatment outweigh the benefits of considering common issues in one trial, class action treatment is not the 'superior' method of adjudication." [58] Here, as discussed above, there may be many individual issues that predominate in the case regarding disclosure, informed consent, and actual damages. Given this likelihood, together with the magnitude of each individual plaintiff's potential damages award, the Court does not find that Mr. Cole has demonstrated that a class action is superior.

In light of the foregoing, the Court finds that a class action is not the superior method for adjudicating this dispute.

### 3. Due Process Concerns

 Gene by Gene also argues that "even if Plaintiff can meet his burden to establish the elements of Rule 23," the Court should deny class certification because the potential "damages are overly excessive." [59] The Ninth Circuit instructs it is "not appropriate to evaluate the excessiveness of the award [when deciding whether to certify a proposed class]." [60] This Court has carefully considered available remedies under Alaska's Genetic Privacy Act to determine whether individual litigation or a class action is the preferable method for adjudication in this case. But the Court has not considered the distinct issue of whether the overall potential damages award at stake if the proposed class were certified would violate Gene by Gene's right to due process.[61] In light of the Court's determination under Rule 23(b)(3), the Court does not reach this issue.

### CONCLUSION

Because Mr. Cole has not established that common questions predominate and that a class action is the superior method of adjudication, the Court finds that class certification is inappropriate for the proposed Class and Subclass at this time.[62] Therefore, Mr. Cole's Motion for Class Certification at Docket 138 is hereby DENIED. The class action claims in Mr. Cole's Complaint are DISMISSED. This action shall proceed with respect to Mr. Cole's individual claims only.

---

**58.** *Zinser*, 253 F.3d at 1192 (citing *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996) and *Dalkon Shield*, 693 F.2d at 856).

**59.** Docket 170 (sealed Gene by Gene Opp'n) at 22.

**60.** *Bateman v. American Multi–Cinema, Inc.*, 623 F.3d 708 (9th Cir. 2010): *see also Stockwell*, 749 F.3d at 1111–12 (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 133 S.Ct. 1184, 1194–95, 185 L.Ed.2d 308 (2013)) ("Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.").

**61.** In *Bateman*, the Ninth Circuit reviewed a district court's decision to deny class certification. There, despite the small amount of statutory damages available—$100 to $1,000 if willful—the district court was troubled by the magnitude of the defendant's potential liability, which if the class were certified may have amounted to $29 million to $290 million due to the number of alleged violations. The district court denied class certification on that basis, holding that "class treatment could result in enormous liability completely out of proportion to any harm suffered by the plaintiff." 623 F.3d at 711. The Ninth Circuit reversed the district court's decision, holding that consideration of the total potential liability is not appropriate at the class certification stage of the litigation. *Id.* at 723.

**62.** A court may revisit its certification decision at any time before final judgment. *See* Rule 23(c)(1)(C) (providing that "[a]n order that grants or denied class certification may be altered or amended before final judgment.").